## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| KAWANNA CAMPBELL, an individual | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| V. | ) | Case No.: |
| | ) | |
| EAST ALABAMA MEDICAL CENTER, | ) | |
| An Alabama Corporation, | ) | |
| | ) | |
| DEFENDANT. | ) | |

## **COMPLAINT**

COMES NOW, Plaintiff Kawanna Campbell, by and through undersigned counsel, hereby files this complaint against Defendant for damages.  In support thereof, Plaintiff alleges and states as follows:

## **NATURE OF CASE**

1.      Plaintiff Campbell complains pursuant to 42 U.S.C. § 1981 (Section 1981) and seeks damages to redress the injuries she suffered due to painfully experiencing race discrimination and retaliation.

2.      Plaintiff also complains pursuant to Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), and seeks damages to redress the injuries Plaintiff suffered due to being exposed to race discrimination and retaliation.

3.      Plaintiff seeks compensatory damages, punitive damages, and reasonable attorneys' fees and costs as remedies for Defendant's violations of her rights.

## JURISDICTION AND VENUE

4.      This is an action for monetary damages pursuant to Section 1981 and Title VII.

5.      This Court had jurisdiction of the claims herein pursuant to 28 U.S.C. §§1331 and 1343, as this action involves federal questions regarding deprivation of Plaintiff's civil rights under section 1981 and Title VII, as amended.

6.       Venue is also proper in this district, pursuant to 28 U.S.C. §1391(b), because Defendant is located in this judicial district, and a substantial part of the events or omission giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## PROCEDURAL REQUIREMENTS

7.       Plaintiff has complied with all statutory prerequisites before filing this action.

8.       On or about March 3, 2022, Plaintiff filed her charges of

discrimination with the Equal Employment Opportunity Commission ("EEOC") Birmingham District and was given EEOC Charge numbers 420-2022-01309.

9.      On September 13, 2022, the EEOC issued a determination and on September 14, 2022, Plaintiff received the Right to Sue Letter in reference to her EEOC Charges.  (Exhibit A)

10.      Plaintiff filed this complaint within ninety (90) days of the issuance of the EEOC's Right to Sue Letter. (Exhibit B)

## PARTIES

11.      At all times material, Plaintiff Kawanna Campbell is an individual, African American woman, and is a resident of the State of Alabama.

12.      At all times material, Defendant East Alabama Medical Center ("EAMC") corporation incorporated in Alabama, existing by the virtue and laws of the state of Alabama, doing business in Opelika, Alabama, with its principal place of business in Opelika, Alabama.

## STATEMENT OF FACTS

1.      Plaintiff is a female of African American descent and a resident of the State of Alabama.

2.      Plaintiff served as a Lab Assistant for Defendant East Alabama

Medical Center in Opelika, Alabama.  Plaintiff began work with EAMC on August 9, 2021.  On February 17, 2022, Plaintiff was told to leave EAMC after meeting with her supervisor, Tracy Wynne (Caucasian/white female), and an unnamed Caucasian/white female R.N.

3.      Defendant EAMC has many departments and clinics.  Plaintiff worked in the Aids/H.I.V. Clinic and was the only African American female in said department.

4.      In January 2022, both Plaintiff's son and Plaintiff became sick, and their doctor recommended that both remain from school and work for approximately five days.  Plaintiff informed her supervisor, Tracy Wynne, a white female, of the doctor's recommendation and provided a Doctor's note on January 21, 2022, after said doctor's visit.

5.       Instead, while Plaintiff was out of the office for five days, Ms. Wynne contacted Plaintiff several times about whether or not Plaintiff was ill and when Plaintiff was returning to work.  However, it was not until January 27, 2022, after Plaintiff returned to work, that Ms. Wynne stated that she would not accept the doctor's note.  Further, Ms. Wynne did not notify Plaintiff that COVID exposure absence was no longer accepted at EAMC until Plaintiff returned to work.  However, other white colleagues

were out due to COVID, Mollie Grace a white female and Phillip Kierce, a white male and taking care of sick children.

6.      Later around February 14 or 15, 2022, Plaintiff requested time off to attend a doctor's appointment scheduled for Friday, February 18, 2022.   Plaintiff selected this date because Plaintiff does not see clients/patients on Mondays and Fridays.  Plaintiff believed this would be convenient for everyone.  Unfortunately, Ms. Wynne denied her request. However, a white female Emily Stububblefield, requested time off to attend a medical appointment and was approved.

7.      It was customary in the office to notify the "huddle" to inform everyone when they would need to take a bit of time off and for what reason.  Employees did not typically enter their information into Kronos. For example, when Plaintiff was out from January 21-26, 2022, Plaintiff did not enter a request into Kronos, and Plaintiff was not told that Plaintiff was required to do so.  Other white employees also followed the customary approach of requesting time off in the "huddle."

8.      Ms. Wynne entered into Plaintiff's personnel file a write-up for the time-off request and alleged that the email Plaintiff sent was unprofessional.

9.      After learning this, on February 16, 2022, Plaintiff complained

to Ms. Wynne that Plaintiff felt this was harassment as she contacted Plaintiff multiple times while Plaintiff was out sick (in which she never stated that exposure was no longer sufficient) and taking care of her son. Though the request was not approved, Plaintiff received a reprimand for making the request, and her doctor's note was not accepted.

10. On February 17, 2022, Ms. Wynne called Plaintiff into her office after Plaintiff filed a complaint with Ms. Wynne.  Present was Ms. Wynne, Plaintiff, and another unnamed white female.  The Caucasian female's name on her badge was hidden, but Plaintiff could see that she was an R.N. from another department.  During that meeting, the white female stated that Plaintiff should be terminated.  Ms. Wynne then immediately told Plaintiff to gather her items and leave.

11.       Plaintiff went back to her office, gathered her belongings, and requested that she provide written documentation of why Plaintiff was being terminated.  Neither Ms. Wynne nor the R.N. provided Plaintiff with any documents.  After gathering her items, Plaintiff left without having the opportunity to clock out.

12.       Additionally, before requesting time off, Plaintiff had not

received any reprimands for her work and did very well according to her 90-day evaluation.  However, after requesting medical leave, Ms. Wynne treated Plaintiff differently from her white counterparts.

13.      Also, while this happened over a short period, a colleague commented to Plaintiff, "do the VooDoo you do."  Plaintiff found this to be a racially insensitive comment.  "VooDoo" is an offensive term only used, Plaintiff believes, because of her race and the historical context relating to Afro/black people.

14.      Based on Ms. Wynne's actions and the difference in treatment between Plaintiff and her white counterparts, Plaintiff was racially discriminated against due to her black race.  However, as stated before, her white peers were treated differently and were approved for their medical time off.

15.      Finally, Ms. Wynne did not follow proper procedures in the progressive discipline, which led to her termination.

## **CAUSES OF ACTION**
## **Count I: §1981 Discrimination**

16.      Plaintiff realleges and adopts as if fully set forth herein, the allegations stated in Paragraph 1 - 15 above as if fully and expressly set forth herein, and further alleges as follows:

17.     Plaintiff is a female of African American descent and a resident of the State of Alabama.

18.     Plaintiff served as a Lab Assistant for Defendant East Alabama Medical Center in Opelika, Alabama.  Plaintiff began work with EAMC on August 9, 2021.  On February 17, 2022, Plaintiff was told to leave EAMC after meeting with her supervisor, Tracy Wynne (Caucasian/white female), and an unnamed Caucasian/white female R.N.

19.     Defendant EAMC has many departments and clinics.  Plaintiff worked in the Aids/H.I.V. Clinic and was the only African American female in said department.

20.     In January 2022, both Plaintiff's son and Plaintiff became sick, and  their doctor recommended that both remain from school and work for approximately five days.  Plaintiff informed her supervisor, Tracy Wynne, a white female, of the doctor's recommendation and provided a Doctor's note on January 21, 2022, after said doctor's visit.

21.     Instead, while Plaintiff was out of the office for five days, Ms. Wynne contacted Plaintiff several times about whether or not Plaintiff was ill and when Plaintiff was returning to work.  However, it was not until January 27, 2022, after Plaintiff returned to work, that MS. Wynne stated

that she would not accept the doctor's note.  Further, Ms. Wynne did not notify Plaintiff that COVID exposure absence was no longer accepted at EAMC until Plaintiff returned to work.  However, other white colleagues were out due to COVID Mollie Grace a white female and Phillip Kierce, a white male and taking care of sick children.

22.     Later around February 14 or 15, 2022, Plaintiff requested time off to attend a doctor's appointment scheduled for Friday, February 18, 2022.   Plaintiff selected this date because Plaintiff does not see clients/patients on Mondays and Fridays.  Plaintiff believed this would be convenient for everyone.  Unfortunately, Ms. Wynne denied her request.  However, a white female requested time off to attend a medical appointment and was approved.

23.     It was customary in the office to notify the "huddle" to inform everyone when they would need to take a bit of time off and for what reason.  Employees did not typically enter their information into Kronos.   For example, when Plaintiff was out from January 21-26, 2022, Plaintiff did not enter a request into Kronos, and Plaintiff was not told that Plaintiff was required to do so.  Other white employees also followed the customary approach of requesting time off in the "huddle."

24.    Ms. Wynne entered into Plaintiff's personnel file a write-up for the time-off request and alleged that the email Plaintiff sent was unprofessional.

25.    After learning this, on February 16, 2022, Plaintiff complained to Ms. Wynne that Plaintiff felt this was harassment as she contacted Plaintiff multiple times while Plaintiff was out sick (in which she never stated that exposure was no longer sufficient) and taking care of her son.  Though the request was not approved, Plaintiff received a reprimand for making the request, and her doctor's note was not accepted.

26.    On February 17, 2022, Ms. Wynne called Plaintiff into her office after Plaintiff filed a complaint with Ms. Wynne.   Present was Ms. Wynne, Plaintiff, and another unnamed white female.  The Caucasian female's name on her badge was hidden, but Plaintiff could see that she was an R.N. from another department.   During that meeting, the white female stated that Plaintiff should be terminated.  Ms. Wynne then immediately told Plaintiff to gather her items and leave.

27.    Plaintiff went back to her office, gathered her belongings, and requested that she provide written documentation of why Plaintiff was being terminated.  Neither Ms. Wynne nor the R.N. provided Plaintiff with any

documents.   After gathering her items, Plaintiff left without having the opportunity to clock out.

28.    Additionally, before requesting time off, Plaintiff had not received any reprimands for her work and did very well according to her 90-day evaluation.   However, after requesting medical leave, Ms. Wynne treated Plaintiff differently from her white counterparts.

29.    Also, while this happened over a short period, a colleague commented to Plaintiff, "do the VooDoo you do."   Plaintiff found this to be a racially insensitive comment.   "VooDoo" is an offensive term only used, Plaintiff believes, because of her race and the historical context relating to Afro/black people.

30.    Based on Ms. Wynne's actions and the difference in treatment between Plaintiff and her white counterparts, Plaintiff was racially discriminated against due to her black race.   However, as stated before, her white peers were treated differently and were approved for their medical time off.

31.    Finally, Ms. Wynne did not follow proper procedures in the progressive discipline, which led to her termination.

32.    Plaintiff Campbell, as African American woman, was discriminated against by Defendant because of her race as provided under Section 1982.

33.    As a result of Defendant's harassment and disparate treatment because of Plaintiff's race, such actions adversely affected the terms, conditions, and privileges of Plaintiff's discrimination, which was so pervasive as to alter the work environment and create a cold and hostile work environment.

34.    Defendant's inaction to rectify the issues was done knowingly, intentionally, and in willful, wanton, reckless disregard of Plaintiff's protected rights.

35.    Defendant had actual notice or should have known of Plaintiff's harassment and disparate treatment but failed to act appropriately.

36.    Defendant's harassment and disparate treatment of Plaintiff' was, in whole or part, motivated by their race.

37.    Defendant discriminated against Plaintiff with respect to the terms, conditions, and privileges of employment because of their race.

38.    At all material times, Plaintiff's harassment and disparate treatment was a "significant change" and adverse action in employment status.

39.    As a direct and proximate result of Defendant EAMC's race discrimination, Plaintiff has suffered, and continues to suffer, loss of income, loss of enjoyment of life, emotional distress, pain and suffering, embarrassment, humiliation, and distress.

### Prayer for Relief

WHEREFORE, Plaintiff requests that judgment be entered against Defendant Saugahatchee for damages, compensatory, consequential, punitive damages, and all equitable relief, in addition to all litigation expenses, attorney fees and costs, and any other lawful and equitable relief this Court deems to be just and proper.

### Count II: §1981 Retaliation

40.    Plaintiff realleges and adopts as if fully set forth herein, the allegations stated in Paragraph 1 – 39 above as if fully and expressly set forth herein, and further alleges as follows:

41.    After several adverse actions, on February 16, 2022, Plaintiff complained to Ms. Wynne that Plaintiff felt this was harassment as she contacted Plaintiff multiple times while Plaintiff was out sick (in which she never stated that exposure was no longer sufficient) and taking care of her son.  Though the request was not approved, Plaintiff received a reprimand for making the request, and her doctor's note was not accepted.

42.    On February 17, 2022, Ms. Wynne called Plaintiff into her office after Plaintiff filed a complaint with Ms. Wynne.  Present was Ms. Wynne, Plaintiff, and another unnamed white female.  The Caucasian female's name on her badge was hidden, but Plaintiff could see that she was an R.N. from

another department.   During that meeting, the white female stated that Plaintiff should be terminated.   Ms. Wynne then immediately told Plaintiff to gather her items and leave.

43.   Plaintiff went back to her office, gathered her belongings, and requested that she provide written documentation of why Plaintiff was being terminated.   Neither Ms. Wynne nor the R.N. provided Plaintiff with any documents.   After gathering her items, Plaintiff left without having the opportunity to clock out.

44.   Additionally, before requesting time off, Plaintiff had not received any reprimands for her work and did very well according to her 90-day evaluation.   However, after requesting medical leave, Ms. Wynne treated Plaintiff differently from her white counterparts.

45.   Also, while this happened over a short period, a colleague commented to Plaintiff, "do the VooDoo you do."   Plaintiff found this to be a racially insensitive comment.   "VooDoo" is an offensive term only used, Plaintiff believes, because of her race and the historical context relating to Afro/black people.

46.   Based on Ms. Wynne's actions and the difference in treatment between Plaintiff and her white counterparts, Plaintiff was racially discriminated

against due to her black race.  However, as stated before, her white peers were treated differently and were approved for their medical time off.

47.    Finally, Ms. Wynne did not follow proper procedures in the progressive discipline, which led to her termination.

48.    As an African American woman, Plaintiff Campbell was discriminated against by Defendants because of her race, as provided under Section 1982.

49.    As a result of Defendant's harassment and disparate treatment because of Plaintiff's race, such actions adversely affected the terms, conditions, and privileges of Plaintiff's discrimination was so pervasive as to alter the work environment and create a cold and hostile work environment.

50.    Defendant's inaction to rectify the issues was done knowingly, intentionally, and in willful, wanton, reckless disregard of Plaintiff's protected rights.

51.    Defendant had actual notice or should have known of Plaintiff's harassment and disparate treatment but failed to act appropriately.

52.    Plaintiff claims unlawful retaliation under 42 U.S.C. §1981 for opposition to Defendant's illegal employment practices.

53.    Defendant retaliated against Plaintiff knowingly, intentionally, and in willful, wanton, and reckless disregard of Plaintiff's federally protected rights.

54.   As a direct and proximate result of Defendant EAMC's race discrimination, Plaintiff has suffered and continues to suffer a loss of income, loss of enjoyment of life, emotional distress, pain and suffering, embarrassment, humiliation, and distress.

55.   As specifics for the Section 1981 Retaliation that Plaintiff suffered, Plaintiff cites the facts set forth particularly in the statement of facts above, paragraphs 1 – 54 above.

## Prayer For Relief

WHEREFORE, Plaintiff requests that judgment be entered against Defendant Saugahatchee for damages, compensatory, consequential, punitive damages, and all equitable relief, in addition to all litigation expenses, attorney fees and costs, and any other lawful and equitable relief this Court deems to be just and proper.

## Count III: Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. §2000e-2(a) Race-based Discrimination (Disparate Treatment)

56.   Plaintiff realleges and adopts as if fully set forth herein, the allegations stated in Paragraph 1 - 55 above as if fully and expressly set forth herein, and further alleges as follows:

57.     Plaintiff is a female of African American descent and a resident of the State of Alabama.

58.     Plaintiff served as a Lab Assistant for Defendant East Alabama Medical Center in Opelika, Alabama.  Plaintiff began work with EAMC on August 9, 2021.  On February 17, 2022, Plaintiff was told to leave EAMC after meeting with her supervisor, Tracy Wynne (Caucasian/white female), and an unnamed Caucasian/white female R.N.

59.     Defendant EAMC has many departments and clinics.  Plaintiff worked in the Aids/H.I.V. Clinic and was the only African American female in said department.

60.     In January 2022, both Plaintiff's son and Plaintiff became sick, and their doctor recommended that both remain from school and work for approximately five days.  Plaintiff informed her supervisor, Tracy Wynne, a white female, of the doctor's recommendation and provided a Doctor's note on January 21, 2022, after said doctor's visit.

61.     Instead, while Plaintiff was out of the office for five days, Ms. Wynne contacted Plaintiff several times about whether or not Plaintiff was ill and when Plaintiff was returning to work.  However, it was not until January 27, 2022, after Plaintiff returned to work, that MS. Wynne stated that she would

not accept the doctor's note.  Further, Ms. Wynne did not notify Plaintiff that COVID exposure absence was no longer accepted at EAMC until Plaintiff returned to work.  However, other white colleagues were out due to COVID, Mollie Grace a white female and Phillip Kierce, a white male and taking care of sick children.

62.    Later around February 14 or 15, 2022, Plaintiff requested time off to attend a doctor's appointment scheduled for Friday, February 18, 2022. Plaintiff selected this date because Plaintiff does not see clients/patients on Mondays and Fridays.   Plaintiff believed this would be convenient for everyone.  Unfortunately, Ms. Wynne denied her request.  However, a white female requested time off to attend a medical appointment and was approved.

63.    It was customary in the office to notify the "huddle" to inform everyone when they would need to take a bit of time off and for what reason. Employees did not typically enter their information into Kronos.   For example, when Plaintiff was out from January 21-26, 2022, Plaintiff did not enter a request into Kronos, and Plaintiff was not told that Plaintiff was required to do so.  Other white employees also followed the customary approach of requesting time off in the "huddle."

64.    Ms. Wynne entered into Plaintiff's personnel file a write-up for the time-off request and alleged that the email Plaintiff sent was unprofessional.

65.    After learning this, on February 16, 2022, Plaintiff complained to Ms. Wynne that Plaintiff felt this was harassment as she contacted Plaintiff multiple times while Plaintiff was out sick (in which she never stated that exposure was no longer sufficient) and taking care of her son.  Though the request was not approved, Plaintiff received a reprimand for making the request, and her doctor's note was not accepted.

66.    On February 17, 2022, Ms. Wynne called Plaintiff into her office after Plaintiff filed a complaint with Ms. Wynne.   Present was Ms. Wynne, Plaintiff, and another unnamed white female.  The Caucasian female's name on her badge was hidden, but Plaintiff could see that she was an R.N. from another department.   During that meeting, the white female stated that Plaintiff should be terminated.  Ms. Wynne then immediately told Plaintiff to gather her items and leave.

67.    Plaintiff went back to her office, gathered her belongings, and requested that she provide written documentation of why Plaintiff was being terminated.   Neither Ms. Wynne nor the R.N. provided Plaintiff with any

documents.   After gathering her items, Plaintiff left without having the opportunity to clock out.

68.     Additionally, before requesting time off, Plaintiff had not received any reprimands for her work and did very well according to her 90-day evaluation.   However, after requesting medical leave, Ms. Wynne treated Plaintiff differently from her white counterparts.

69.     Also, while this happened over a short period, a colleague commented to Plaintiff, "do the VooDoo you do."   Plaintiff found this to be a racially insensitive comment.   "VooDoo" is an offensive term only used, Plaintiff believes, because of her race and the historical context relating to Afro/black people.

70.     Based on Ms. Wynne's actions and the difference in treatment between Plaintiff and her white counterparts, Plaintiff was racially discriminated against due to her black race.   However, as stated before, her white peers were treated differently and were approved for their medical time off.

71.     Finally, Ms. Wynne did not follow proper procedures in the progressive discipline, which led to her termination.

72.     Section 703 of Title VII, 42 U.S.C. § 2000e-2, prohibits employment practices that discriminate against persons based on their race.

73.    Defendant treated Plaintiff differently than other white employees, as explained in Paragraphs 1 through 72.

74.    As a direct and proximate result of Defendant's disparate treatment, Plaintiff has suffered and continues to suffer, loss of income, enjoyment of life, emotional distress, pain and suffering, embarrassment, humiliation, and distress.

75.    Defendant's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard for Plaintiff's right to be free from discrimination based on race.

## Prayer For Relief

WHEREFORE, Plaintiff requests that judgment be entered against Defendant Saugahatchee for damages, compensatory, consequential, punitive damages, and all equitable relief, in addition to all litigation expenses, attorney fees and costs, and any other lawful and equitable relief this Court deems to be just and proper.

## Count IV: Title VII of the Civil Rights Act of 1964, as amended
## 42 U.S.C. §2000e-2(a)
## Race-based Discrimination (Cold and Hostile Work Environment)

76.    Plaintiff realleges and adopts as if fully set forth herein, the allegations stated in Paragraph 1 - 75 above as if fully and expressly set forth herein, and further alleges as follows:

77.    Plaintiff was subjected to harassment by Defendant's agents and employees because of their race.

78.    Plaintiff was physically, mentally, and emotionally abused by Defendant.

79.    Defendant's agents' and employees' conduct was undertaken because of Plaintiff's race.

80.    The conduct was so severe or pervasive that reasonable persons in Plaintiff's position would find their work environment hostile or abusive.

81.    Plaintiff believed their work environment to be cold and hostile due to Defendants agents' and employees' conduct.

82.    Defendant knew or should have known of the abusive conduct.  The harassment was so pervasive and open that a reasonable employer would have had to have been aware of it.  Instead, management-level employees were complicit in the unlawful conduct.

83.    Defendant did not exercise reasonable care to prevent harassment in the workplace on the bases of race and did not exercise reasonable care to correct any harassing behavior that occurred.

84.   As a direct and proximate result of Defendant's hostile work environment, Plaintiff has suffered, and continues to suffer, loss of income, loss of enjoyment of life, emotional distress, pain and suffering, embarrassment, humiliation, and distress.

85.   Defendant's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard for Plaintiff's right to be free from discrimination based on race.

## **Prayer For Relief**

WHEREFORE, Plaintiff requests that judgment be entered against Defendant East Alabama Medical Center for damages, compensatory, consequential, punitive damages, and all equitable relief, in addition to all litigation expenses and costs, and any other lawful and equitable relief this Court deems to be just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff requests a jury trial on all issues to be tried.

Respectfully submitted this 12th day of December, 2022.

*s/Roderick Walls*
Roderick Walls (ASB-3986-L72R)
Attorney for Plaintiff

**OF COUNSEL:**
**RODERICK WALLS & ASSOCIATES, LLC**
2122 – 1ST Avenue North
Birmingham, Alabama 35203
Tel: (205) 251-0334
Fax: (205) 251-0336
rod@wallscooplaw.com

**PLAINTIFF'S ADDRESS**:
Kawanna Campbell
c/o Roderick Walls & Associates, LLC
2122 First Avenue North
Birmingham, AL 35203


**PLEASE SERVE THE DEFENDANT BY CERTIFIED MAIL**


East Alabama Medical Center Foundation
c/o Laura D. Grill
2000 Pepperell Parkway
Opelika, AL 36801